MATILDA FORT, petitioner-appellant,

*v.*

PATRICK A. FORT, defendant-respondent.

[Submitted October term, 1939. Decided January 25th, 1940.]

*Mr. Milton M. Unger,* for the petitioner-appellant.

*Mr. Edward R. McGlynn,* for the defendant-respondent.

The opinion of the court was delivered by

PORTER, J.

This is a suit for divorce by the wife in which she charges extreme cruelty, the husband counter-claimed on the same grounds. The learned advisory master who heard the case advised a dismissal as to both parties. The wife only appeals from the decree so entered.

This couple were married in 1919, and have two sons, one eighteen and the other sixteen years of age. The wife charges her husband with drinking to excess and with striking her on occasions dating from 1927, until the final act of cruelty on December 12th, 1937. She says that she forgave the earlier acts of cruelty but not the latter ones by reason of which she was obliged to leave him.

Many of the incidents testified to by the wife of his striking her are not corroborated. At least three are, however.

She charges that in March, 1933, he struck her in the ribs. A physician was called twice and a friend took her to a clinic for treatment. There was corroboration by the physician and friend as to the injury.

She alleges that he drove her to a summer camp to visit their sons in July, 1936, accompanied by a friend. They stopped on the return trip for food at Newton, a quarrel ensued; he refused to sit next to her in the automobile requesting the friend to sit between them, which she did; the quarrel continued in the automobile and the wife, corroborated by the friend, says that he struck her in the breast causing her to become nauseated and to vomit. He denies this occurrence and says that he reached over past the ladies to close the door of the automobile and did not strike his wife and that her illness was assumed, though he admits stopping at a drug store to get her some medicine to give her relief.

A culmination of their quarrels came on December 12th, 1937, when she charges the most serious of his acts of cruelty. She testified that he seized her left arm and twisted it behind her causing great pain, upon releasing her he struck her, pulled her hair and threw her on the couch. He denies that he ever struck her. His version of this last affair was that she menaced him with a knife in her hand and he grabbed her arm and she dropped the knife which he then kicked out of the way and turned her over his knee on the couch and chastised her by spanking. She was so badly hurt that she was attended by a physician and seen by another physician who was a relative, was attended by a day and night nurse for several days and was confined to bed for a time, she says ten days, others say fewer. She suffered a nose bleed, a lump on her head, her hair was matted and a large quantity came out when the nurses combed it and she had many bruises about her arms and legs. Two physicians and two nurses testified to the injuries they found. The two boys also testified to the injuries and her disability though they tried to minimize same and lacked frankness with respect thereto.

They obviously were trying to help their father throughout their testimony.

There can be no doubt that this couple lived an unhappy quarrelsome home life during the last years they were together. Both used abusive language to the other and in the presence of the children. It may well be that there was provocation for much of their conduct toward each other.

It seems clear to us, however, that the testimony abundantly supports the wife's charge of extreme cruelty, especially the December 12th episode. His story of self-defense and of spanking her, in view of the extent of her proven injuries, is incredible and preposterous. It was obviously more than a spanking, let alone a mild spanking which counsel calls it. In the light of these established acts of cruelty the inference is strong of the truth of other acts testified to by the wife but not corroborated. While doubtless there was provocation we do not find that it justified the violent conduct on his part, especially that of December 12th.

This case is, of course, a factual one. The learned advisory master had the benefit of seeing the witnesses and their demeanor on the stand. His conclusions are not lightly disregarded. We conclude, however, that he fell into error and that the clear weight of the evidence on the wife's case is contrary to his finding. The appellant, wife, having fully sustained the burden of proof is entitled to a decree of divorce on the ground of extreme cruelty.

The decree appealed from is reversed.

*For affirmance*—THE CHIEF-JUSTICE, WELLS, RAFFERTY, HAGUE, JJ.   4.

*For reversal*—TRENCHARD, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, HETFIELD, DEAR, WOLFSKEIL, JJ.   10.